IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| **PETE ARREDONDO,** *Plaintiff*, | § § § § | **CIVIL ACTION** |
| | § | **CASE NO.: 2:26-CV-18** |
| **V.** | § § | |
| | § | **COMPLAINT PURSUANT TO** |
| | § | **THE ADMINISTRATIVE** |
| **UNITED STATES CUSTOMS** | § | **PROCEDURE ACT,** |
| **AND BORDER PROTECTION,** | § | **5 U.S.C. § 701,** *et seq.* |
| *Defendant.* | § | |

## COMPLAINT

**I.     Introduction and Nature of the Case**

1.     Plaintiff Pete Arredondo brings this action against Defendant United States Customs and Border Protection (hereinafter "Defendant" or "CBP"). Mr. Arredondo seeks declaratory judgment and relief from a final agency decision under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq*.

2.     Specifically, Mr. Arredondo seeks judicial review of CBP's administrative decision refusing to make 19 CBP employees available to testify in a Texas state criminal prosecution in which Mr. Arredondo is the defendant.

**II.    Parties**

3.     Plaintiff is Pete Arredondo, represented by Paul C. Looney of LOONEY SMITH CONRAD & HEFTI P.C., Located at 11767 Katy Freeway, Suite 740, Houston, Texas 77079. .

4.     Defendant is United States Customs and Border Protection, a law enforcement agency of the United States Department of Homeland Security. CBP may be served through the Office of Chief Counsel, U.S. Customs and Border Protection, 1300 Pennsylvania Avenue, Suite

4.4-B, Washington, D.C. 20229, and by email to cbpserviceintake@cbp.dhs.gov.

### III.     Jurisdiction and Venue

5.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, which authorizes this Court to review a final administrative decision or action of CBP; to hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the applicable law, including CBP's *Touhy*[1] regulations set forth at 19 C.F.R., Part 103; to hold unlawful and set aside agency action findings, and conclusions found to be contrary to constitutional right, power, privilege, or immunity; and to compel agency action unlawfully withheld.

6.      This Court has jurisdiction to grant declaratory or other relief in this action pursuant to 28 U.S.C. §§ 2201 – 2202 and 5 U.S.C. §§ 701 – 706.

7.      An actual and justiciable controversy now exists between Mr. Arredondo and CBP, and the requested relief is proper pursuant to 28 U.S.C. §§ 2201 – 2202 and 5 U.S.C. §§ 701 – 706.

8.      Venue is proper before this Court pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claim asserted here occurred in the Western District of Texas. The U.S. Border Patrol agents' participation in the Robb Elementary incident, the subsequent investigation of the law enforcement response to the Robb Elementary incident in which the U.S. Border Patrol agents' gave witness statements, the indictment of Mr. Arredondo, and the pending criminal case against Mr. Arredondo all occurred in the Western District of Texas. Further, Mr. Arredondo is a resident of the Western District of Texas, and no real property is involved in the

---

[1] *Touhy* regulations refer to the Departmental housekeeping regulations recognized by the Supreme Court in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951). *See* 5 U.S.C. § 301.

action.

9. The federal government has waived sovereign immunity in this action pursuant to 5 U.S.C. § 702.

## IV. Facts

### A. Historical background

10. On May 24, 2022, a lone gunman entered Robb Elementary School in Uvalde, Texas, with a semi-automatic rifle.

11. Upon entering the school, the gunman entered one of the doors to the adjoining Classrooms 111 and 112, which were full of fourth-grade students and their teachers.

12. An internal door connected Classrooms 111 and 112, giving the gunman access to both classrooms.

13. Approximately 77 minutes after the gunman began his killing spree, CBP personnel consisting of Border Patrol Agents (BPA) assigned to the Border Patrol Tactical Unit (BORTAC), along with state and local law enforcement officials, entered the classroom and exchanged fire with the gunman.

14. CBP personnel killed the gunman.

15. By the time CBP agents killed the gunman at Robb Elementary School, the gunman had killed 19 children and 2 teachers and had wounded 16 other people.

16. On May 24, 2022, Mr. Arredondo was the Chief of Police for the Uvalde Consolidated Independent School District.

17. On May 24, 2022, 188 CBP personnel responded to Robb Elementary School in Uvalde, Texas, or provided support during or following the incident at Robb Elementary School.

18. No less than 126 CBP employees voluntarily gave statements to the Texas Rangers during their investigation of the shooting at Robb Elementary School.

B. **Procedural background**

19. Mr. Arredondo has been indicted on 10 counts of endangering a child under Article 22.041(c) for alleged acts and/or omissions during his response to the shooting at Robb Elementary School.

20. To prove Mr. Arredondo's guilt beyond a reasonable doubt and convict him in the pending criminal case, the State of Texas must prove a causation element, i.e., that Mr. Arredondo placed certain children in imminent danger of bodily injury, death, physical impairment, and mental impairment.

21. On each count of endangering a child in the indictment against Mr. Arredondo, the state alleges various manners and means and theories of culpability, but every manner and means pled by the State of Texas in its Amended Indictment alleges as its causation element that Mr. Arredondo's alleged act or omission delayed the response by law enforcement officers.

22. More law enforcement personnel from CBP responded to Robb Elementary School on May 24, 2022, than from any other law enforcement agency.

23. On February 9, 2026, Mr. Arredondo, acting through counsel, submitted a *Touhy* request to Chief Counsel of CBP in which he requested that CBP make 19 CBP employees available to testify for the defense in *State of Texas v. Pete Arredondo*, Case No. 2024-06-16368-CR, 38th Judicial District, Uvalde County, Texas.

24. Mr. Arredondo's *Touhy* request of February 9, 2026, which includes its Attachments—specifically Attachment A, Amended Indictment in Cause 2024-06-16368-CR, and Attachment B, Affidavit of Matthew J. Hefti, dated February 9, 2026—is attached as Exhibit 1, and it is incorporated here by reference as if fully set forth herein. Fed. R. Civ. P. 10(c).

25. On February 26, 2026, CBP Chief Counsel Andrew J. Block replied to Mr. Arredondo through letter to Mr. Arredondo's counsel in which Chief Counsel Block denied Mr.

Arrendondo's request in its entirety.

26. CBP Chief Counsel Andrew J. Block's denial letter of February 26, 2026, is attached as Exhibit 2, which is incorporated here by reference as if fully set forth herein. Fed. R. Civ. P. 10(c).

**C. CBP's denial is overly broad and lacks individualization or particularity.**

27. Mr. Arredondo's *Touhy* request specifically requested that if CBP declined to make any of the requested witnesses available that CBP provide particular reasons for its decision on each witness rather than a wholesale and unreasoned denial of all witnesses. Complaint Exhibit 1 at 2 – 3.

28. Chief Counsel Block did not provide particular reasons for the denial decision on each witness but denied the request for all witnesses under the same analysis without individualized consideration for each of the 19 requested witnesses.

**D. The requested witnesses are the only admissible source of the requested information.**

29. CBP's denial letter is unreasonable in its claims that Mr. Arredondo's *Touhy* request did not show that the requested witnesses are the only source of the requested information. Complaint Exhibit 2 at 3.

30. The sworn affidavit of Matthew J. Hefti included with Mr. Arredondo's *Touhy* request stated, "each of these [requested] witnesses are percipient eyewitnesses each having their own perspective and reasons for taking the actions they did or refraining from taking action, and the evidence is unavailable from any other source." Complaint Exhibit 1 at 32, ¶ 9.

31. The sworn affidavit of Matthew J. Hefti included with Mr. Arredondo's *Touhy* request stated that the individual testimony of CBP personnel was necessary for the defense to rebut the State's allegation that Mr. Arredondo personally delayed the response of other law

enforcement personnel, including the CBP personnel, and, "Testimony from the requested witnesses about first-hand observation, individual perceptions, and reasoning—all of which is necessary for Mr. Arredondo to rebut the State's allegations—are unavailable from any other source besides the witnesses themselves." Complaint Exhibit 1 at 55, ¶ 59.

32. CBP's denial letter is mistaken in its claims that Mr. Arredondo's request is an attempt to call CBP employees as fact witnesses to elicit expert witness testimony that is available from other sources. Complaint Exhibit 2 at 3.

33. The sworn affidavit of Matthew J. Hefti included with Mr. Arredondo's *Touhy* request explained that, "reasonable officers made reasonable subjective decisions based on the dangers, threats, obstacles, and challenges present in the moment." Complaint Exhibit 1 at 56, ¶ 62.

34. The sworn affidavit of Matthew J. Hefti included with Mr. Arredondo's *Touhy* request explained, "Each individual officer had their own perspective, and because the State alleges that Mr. Arredondo is responsible for the decisions and actions of the other individual responding officers, the individual perspectives, reasoning, decision making, and actions of the other individual officers—to include CBP officers who comprised the largest contingent of the law enforcement response—must be presented to the jury." Complaint Exhibit 1 at 56, ¶ 62.

35. The sworn affidavit of Matthew J. Hefti included with Mr. Arredondo's *Touhy* request explained, "The requested testimony is necessary to show that CBP officers, including the acting commander of the CBP officers on scene, knew that there were children alive inside rooms 111 and 112, contrary to evidence the State will attempt to present at trial and [contrary to] the prevailing narrative that CBP officers did not know there were children inside rooms 111 and 112." Complaint Exhibit 1 at 56, ¶ 63.

36. No one but the requested witnesses can provide admissible testimony about what each requested witness personally knew or did not know at any given time during their response during their response to the Robb Elementary School shooting.

37. No one but the requested witnesses can provide admissible testimony about each witness's own rationale and reasons for taking certain actions or failing to take certain actions during their response to the Robb Elementary School shooting.

**E. Mr. Arredondo's *Touhy* request demonstrates that the information requested is relevant and material to his defense.**

38. 19 C.F.R. § 103.23(a)(3)(i) lists as a general factor to be considered whether the requesting party has demonstrated that the information requested is, "Relevant and material to the action pending, based on copies of the summons and complaint that are required to be attached to the subpoena duces tecum or other demand."

39. The pending proceeding in which testimony is sought is a Texas state criminal case in which no summons and complaint exist; however, Mr. Arredondo included in his *Touhy* request a copy of the Amended Indictment in the case as the functional equivalent of a summons and complaint. Complaint Exhibit 1 at 5 – 28.

40. The Amended Indictment against Mr. Arredondo makes clear that the State's allegations and their theory of prosecution depend on proof beyond a reasonable doubt that Mr. Arredondo delayed the response of other law enforcement officers to the shooting at Robb Elementary School.

41. The 19 requested witnesses were other law enforcement officers who directly participated in the response to the shooting at Robb Elementary School.

42. The sworn affidavit of Matthew J. Hefti included with Mr. Arredondo's *Touhy* request summarizes the action each requested witness took as it relates to their individual

response to the shooting at Robb Elementary School.

43. The requested witnesses are material and necessary to the defense of Mr. Arredondo because only the requested witnesses can establish that Mr. Arredondo is not responsible for any delay in the response of each of the requested witnesses.

**F. Mr. Arredondo's *Touhy* request is reasonable in scope and describes the need for information with particularity.**

44. CBP's denial letter is unreasonable, arbitrary, and capricious in its claims that Mr. Arredondo's *Touhy* request is unreasonable in scope and fails to describe Mr. Arredondo's need for the information with particularity.

45. Neither the plain language of 19 C.F.R. § 103.22 nor 19 C.F.R. § 103.23 requires Mr. Arredondo to describe his need for the information with particularity.

46. 19 C.F.R. § 103.23 does list as a general factor to be considered, "Whether the requesting party has demonstrated that the information requested is: […] Reasonable in its scope, i.e., the documents, information, or testimony sought are described with particularity." 19 C.F.R. § 103.23(a)(3)(iv).

47. 188 CBP employees responded or provided support during the incident at Robb Elementary School.

48. Mr. Arredondo only seeks testimony from 19 of those 188 employees, all of which are identified with particularity by name.

49. The *Touhy* request is limited in scope to requesting only 10.1% of the CBP employees who responded or provided support during the incident at Robb Elementary School.

50. The sworn affidavit of Matthew J. Hefti included with Mr. Arredondo's *Touhy* request described the information sought with particularity by including 26 paragraphs articulating the areas of inquiry for the requested testimony from each agent from whom

testimony is requested. Complaint Exhibit 1 at 34 – 36, ¶¶ 13 – 38.

51. The sworn affidavit of Matthew J. Hefti included with Mr. Arredondo's *Touhy* request described the testimony sought with particularity by including an individualized summary of the expected for each witness that was requested. Complaint Exhibit 1 at 36 – 54.

52. The training of a CBP employee is relevant to the question of whether Mr. Arredondo is responsible for the actions taken by the CBP employees and any delay in their response, or whether the training and experience and individual thought processes of the CBP employees is responsible for the actions taken by the CBP employees and any delay in their response.

**G. Providing the requested witnesses would not unduly interfere with the orderly conduct of CBP business.**

53. The 19 requested witnesses are members of a law enforcement agency.

54. Members of CBP regularly testify in both State and Federal proceedings as part of their duties.

55. The information requested through the witnesses requested by Mr. Arredondo is only available in admissible format at trial through the testimony of the witnesses themselves.

56. 188 CBP employees participated in a law enforcement response to the shooting at Robb Elementary School. Making only approximately 10% of them available to testify is a reasonable and limited request relative to the disproportionately large contingent of CBP employees who responded.

**H. Mr. Arredondo's request seeks no confidential information.**

57. Mr. Arredondo's *Touhy* request seeks no confidential law enforcement techniques or procedures.

58. Mr. Arredondo's *Touhy* requests only seeks information regarding training and

experience of individual witnesses to the extent that it informs the jury whether Mr. Arredondo is responsible for the actions taken by the CBP employees and any delay in their response, or whether the training and experience and individual thought processes of the CBP employees is responsible for the actions taken by the CBP employees and any delay in their response.

59. Information from the 19 requested witnesses that reveals each witness took action based on their training and experience and not based on any action or inaction of Mr. Arredondo is exculpatory.

60. Mr. Arredondo has a constitutional right to exculpatory information.

**I.  CBP employees have official information regarding this matter.**

61. CBP makes the unreasonable claim that CBP has no official interest or information regarding this matter. Complaint Exhibit 2 at 4.

62. CBP's Office of Professional Responsibility conducted its own investigation into this matter and prepared its own report in Case # UF2022586, Case Title: Uvalde Texas School Shooting w/Fatalities.

63. The 19 requested witnesses are all CBP employees.

64. The 19 requested witnesses were all direct participants in the law enforcement response to the shooting at Robb Elementary School.

65. The 19 requested witnesses all have information regarding this matter.

**V.     COUNT 1: The February 26, 2026, CBP denial of Mr. Arredondo's *Touhy* request of February 9, 2026, in which Mr. Arredondo requested the availability of 19 CBP employees to testify for Mr. Arredondo's defense in a state court criminal proceeding was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with applicable law.**

66. CBP's denial precluding Mr. Arredondo from obtaining relevant and admissible testimony from 19 CBP employees is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the Administrative Procedure Act, 5 U.S.C. § 701 *et*

*seq.*, and in violation of 5 U.S.C. § 301.

67. Mr. Arredondo incorporates all exhibits to this complaint and all previous paragraphs as if fully set forth herein.

68. Mr. Arredondo has complied with all procedural legal requirements to request witness availability from CBP in accordance with CBP's *Touhy* regulations.

69. Mr. Arredondo has exhausted administrative remedies for seeking the testimony from the 19 witnesses he identified in his *Touhy* request.

70. CBP's letter denying Mr. Arredondo's *Touhy* request is a final agency decision subject to judicial review under the Administrative Procedure Act.

71. CBP's regulations for production or disclosure of information in federal, state, local, and foreign proceedings are promulgated under the authority of 5 C.F.R. § 301.

72. 5 U.S.C. § 301 does not authorize withholding information from the public or limiting the availability of records to the public.

73. CBP's *Touhy* regulations, promulgated under 6 C.F.R. Part 5 and 19 C.F.R. Part 103, are contrary to law to the extent they authorize withholding information from the public or limiting the availability of records to the public.

74. CBP's *Touhy* denial letter misstates legal standards, misrepresents judicial holdings, and imposes a heightened burden on Mr. Arredondo to obtain witness testimony that is contrary to law.

75. CBP's *Touhy* denial misapplies their own *Touhy* regulations.

76. The analysis CBP provided in their *Touhy* denial letter does not justify withholding the requested testimony from a criminal defendant.

77. CBP's *Touhy* denial relied on improper factors, disregarded an important aspect

of the problem, and offered explanations that run counter to the evidence.

78. Mr. Arredondo's right to the testimony outweighs CBP's privilege or desire to withhold the testimony.

79. Mr. Arredondo has been, and will continue to be, damaged by CBP's improper denials. Mr. Arredondo's ability to prepare a complete defense in *State of Texas v. Pete Arredondo*, Case No. 2024-06-16368-CR, 38th Judicial District, Uvalde County, Texas, has been impaired. Mr. Arredondo's ability to compel witnesses whose testimony is material and favorable to his defense and his ability to present a complete defense will be impaired or denied if CBP's witness denial decision is upheld.

**VI.  COUNT 2: The February 26, 2026, CBP denial of Mr. Arredondo's *Touhy* request of February 9, 2026, in which Mr. Arredondo requested the availability of 19 CBP employees to testify for Mr. Arredondo's defense in a state court criminal proceeding was contrary to constitutional right, power, or privilege.**

80. Mr. Arredondo incorporates all exhibits to this complaint and all previous paragraphs as if fully set forth herein.

81. CBP's denial precluding Mr. Arredondo from obtaining relevant and admissible testimony from 19 CBP employees is contrary to Mr. Arredondo's constitutional right to due process, right to compulsory process, right to present a complete defense, and right to the effective assistance of counsel, guaranteed him by the Sixth Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment to the United States Constitution.

82. Mr. Arredondo incorporates all exhibits to this complaint and all previous paragraphs as if fully set forth herein.

83. Mr. Arredondo has complied with all procedural legal requirements to request witness availability from CBP in accordance with CBP's *Touhy* regulations.

84. Mr. Arredondo has exhausted administrative remedies for seeking the testimony from the 19 witnesses he identified in his *Touhy* request.

85. CBP's letter denying Mr. Arredondo's *Touhy* request is a final agency decision subject to judicial review under the Administrative Procedure Act.

86. CBP's regulations for production or disclosure of information in federal, state, local, and foreign proceedings are promulgated under the authority of 5 C.F.R. § 301.

87. 5 U.S.C. § 301 does not authorize withholding information from the public or limiting the availability of records to the public.

88. CBP's *Touhy* regulations, promulgated under 6 C.F.R. Part 5 and 19 C.F.R. Part 103, are contrary to law to the extent they authorize withholding information from the public or limiting the availability of records to the public.

89. CBP's *Touhy* denial letter misstates legal standards, misrepresents judicial holdings, and imposes a heightened burden on Mr. Arredondo to obtain witness testimony that is contrary to law.

90. CBP's *Touhy* denial misapplies their own *Touhy* regulations.

91. The analysis CBP provided in their *Touhy* denial letter does not justify withholding the requested testimony from a criminal defendant.

92. CBP's *Touhy* denial relied on improper factors, disregarded an important aspect of the problem, and offered explanations that run counter to the evidence.

93. Mr. Arredondo's right to the testimony outweighs CBP's privilege or desire to withhold the testimony.

94. Mr. Arredondo has been, and will continue to be, damaged by CBP's improper denials. Mr. Arredondo's ability to prepare a complete defense in *State of Texas v. Pete*

*Arredondo*, Case No. 2024-06-16368-CR, 38th Judicial District, Uvalde County, Texas, has been impaired. Mr. Arredondo's ability to compel witnesses whose testimony is material and favorable to his defense and his ability to present a complete defense will be impaired or denied if CBP's witness denial decision is upheld.

**VII. Request for Relief**

95. Mr. Arredondo requests that this Court issue an order:

   a. Holding unlawful and setting aside CBP's February 26, 2026, denial of Mr. Arredondo's request for the availability of 19 CBP employees to testify for Mr. Arredondo's defense in *State of Texas v. Pete Arredondo*, Case No. 2024-06-16368-CR, 38th Judicial District, Uvalde County, Texas;

   b. Compelling agency action unlawfully withheld, specifically, requiring CBP to make the requested 19 employees available to testify for Mr. Arredondo's defense in *State of Texas v. Pete Arredondo*, Case No. 2024-06-16368-CR, 38th Judicial District, Uvalde County, Texas;

   c. Granting all other appropriate, equitable, or remedial relief that the Court considers appropriate.

Respectfully submitted,

/s/ Paul C. Looney
Paul C. Looney
Texas Bar No: 12555900
**LOONEY SMITH CONRAD & HEFTI P.C.**
11767 Katy Freeway, Ste. 740
Houston, TX 77079
Tel. (281) 597-8818
Fax (281) 597-8284
info@looneyconrad.com
**Attorney for Mr. Pete Arredondo**