**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**DEL RIO DIVISION**

PETE ARREDONDO,

    *Plaintiff*,

v.

    Case No. 2:26-cv-00018-AM

UNITED STATES CUSTOMS AND
BORDER PROTECTION,

    *Defendant*.

**MOTION FOR SUMMARY JUDGMENT**

Defendant United States Customs and Border Protection (CBP) files this Motion for

Summary Judgment.

**INTRODUCTION**

Plaintiff Pete Arredondo seeks to have this Court review, under the Administrative

Procedure Act (APA), CBP's denial of his request for testimony from several Border Patrol

Agents (BPA or the BPAs) at his upcoming criminal trial in state court. Federal agencies'

responses to such requests are "[a]t bottom . . . a policy decision about the best use of the

agency's resources.'" *St. Vincent Med. Grp.*, 71 F.4th 1073, 1076 (7th Cir. 2023) (quoting

*COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 278 (4th Cir. 1999)). And under the APA,

that decision is reviewed under a "narrow" standard in which the Court "must be mindful 'not to

substitute [its] judgment for that of the agency." *10 Ring Precision, Inc. v. Jones*, 722 F.3d 711,

723 (5th Cir. 2013). Rather, the Court considers whether the agency considered the appropriate

factors under the governing law and articulated a rational relationship between the facts found

and the choice made. *City of Arlington, Tex. v. F.C.C.*, 668 F.3d 229, 260 (5th Cir. 2012) (agency

action not arbitrary and capricious "so long as the agency gave at least minimal consideration to the relevant facts as contained in the record" (internal citation and quotation marks omitted)).

Here, Plaintiff seeks testimony from nineteen BPAs on a broad range of 26 fact and opinion topics. AR000033–35. The Administrative Record shows that the agency considered Plaintiff's request and explained why multiple factors of the applicable *Touhy* regulations showed that disclosure was not warranted. Plaintiff has not adequately shown how the BPAs' testimony on those subjects would be relevant or necessary. Nonetheless, CBP provided to Plaintiff and publicly released much of the information Plaintiff requests in its Office of Professional Responsibility Investigative Operations Directorate Case Closing Report for the Uvalde Texas School Shooting w/ Fatalities (the CBP OPR Report). In so doing, CBP considered the law, made a reasoned decision, and explained itself. The Court should enter a summary judgment affirming CBP's denial of Plaintiff's *Touhy* request.

If, alternatively, the Court finds that CBP's denial of Plaintiff's request is arbitrary and capricious, the Court should remand Plaintiff's request for further consideration by CBP.

## BACKGROUND

### A. Legal Background

This APA suit is a challenge to CBP's response to the *Touhy* request that Plaintiff submitted on CBP on February 9, 2026. Federal employee witnesses cannot be compelled by a state court to testify about matters that relate to their official duties. *See, generally, e.g.*, *State of La. v. Sparks*, 978 F.2d 226, 234–36 & n.16 (5th Cir. 1992) (collecting cases and discussing *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951)). Rather, federal agencies, including Defendant, have promulgated regulations—commonly known as *Touhy* regulations[1]—that

---

[1]  *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951); *see also CF Indus., Inc. v. Dep't of Just. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 692 F. App'x 177, 181 (5th

govern their responses to requests for agency testimony and information. Those regulations both establish procedural requirements and enumerate the factors that agencies must consider in determining whether to grant or deny such a request. Defendant's *Touhy* regulations are codified at 19 C.F.R. §§ 103.21–103.27.

Most relevant here, the CBP *Touhy* regulations require the agency, in considering whether to authorize testimony, to consider, among other factors:

> Whether the requesting party has demonstrated that the information requested is . . . [g]enuinely necessary to the proceeding, i.e., a showing of substantial need has been made; [u]navailable from other sources; and [r]easonable in its scope, i.e., the documents, information or testimony sought are described with particularity."

19 C.F.R. § 103.23(a)(3)(ii)–(iv). The regulations also provide that "disclosure will not be made" where such disclosure "would unduly interfere with the orderly conduct of CBP business" or where "CBP has no interest . . . regarding the matter in which disclosure is sought[.]" 19 C.F.R. § 103.23(b)(5), (8)–(9).

### B. Factual Background

#### 1. Plaintiff's *Touhy* Request to CBP

Plaintiff's *Touhy* request to CBP sought to have nineteen BPAs be made available to provide testimony at Plaintiff's criminal trial in state court. AR000031–32. Plaintiff's *Touhy* request enumerates, for each of the nineteen witnesses, twenty-six topics of questioning. These range from discrete factual topics—such as "[w]hat position each agent held at the time of the incident and their level of training and experience"—to open-ended questions seeking the agents' opinions, such as "[w]hether each agent believes in his own training and experience and based on

---

Cir. 2017) (general background regarding *Touhy* regulations); *State of La. v. Sparks*, 978 F.2d 226, 234 (5th Cir. 1992) (same).

the risks he personally assessed and observed that it was reasonable and necessary to take the actions he did"; "[w]hat benefits, if any, resulted from waiting until the proper resources and personnel were in place to breach the room and engage the shooter successfully"; and "[w]hat additional harms, if any, were possible or likely to occur if law enforcement had immediately breached without the resources and personnel available at the time law enforcement breached the room and killed the shooter." AR000033–35. The *Touhy* request also summarizes the testimony that each BPA would give on these topics—summaries that appear to be drawn from investigative summaries of interviews with offices conducted by the Texas Rangers, as well as from the CBP OPR Report. AR000035–53.

Arredondo claims that the testimony is relevant to prosecution theories he expects to face at his criminal trial, such as that he was "the established incident commander" who exercised authority over all law enforcement officers on the scene; that he was aware that children were alive inside the two classrooms where the shooter was located; and that he was responsible for other officers' delay in entering those rooms. AR000054–58. In addition to these relevance arguments, Arredondo argues that the testimony is genuinely necessary and because the facts of each individual officer's "first-hand observation, individual perceptions, and reasoning . . . are unavailable from any other source besides the witnesses themselves." AR000054.

      2.   CBP's Response to Plaintiff's *Touhy* Request

In its Response to Plaintiff's *Touhy* request, CBP explained why multiple of the factors codified at 19 C.F.R. § 103.23 weigh against his request for testimony. First, Plaintiff had not shown that the information he seeks is "[u]navailable from other sources[,]" 19 C.F.R. § 103.23(3)(iii). Much of the information Plaintiff describes is already available through investigative summaries from the Texas Rangers' investigation and the CBP OPR Report—

Motion for Summary Judgment          4

indeed, his very request described the anticipated testimony of each of the nineteen BPAs. AR000060. But even aside from the Texas Rangers' investigative summaries and the CBP OPR Report, Plaintiff did not show why the numerous state and local law enforcement officers present at the scene, who witnessed the same events as the CBP officers, would not be able to testify about those events. AR000060. Additionally, the Response noted that many of the topics of examination called for testimony in the form of opinion—that is, expert testimony—which would be available from any number of other law enforcement sources. AR000060. Ultimately, the Response noted, Plaintiff's *Touhy* request did not show genuine necessity or substantial need, but an effort "to use CBP testimony in place of or to corroborate information that can be obtained from other sources." AR000060.

Second, the Response noted that the information sought was neither reasonable in scope nor described with particularity. AR000060–61 (citing 19 C.F.R. §§ 103.23(a)(3)(i), (ii)). Rather, many of the 26 areas of inquiry enumerated in the *Touhy* request are broad, open-ended, encompass multiple sub-areas, and call for the opinions or beliefs of the agents. AR000033–35. But the Request does not explain how or why the broad array of testimony sought—26 topics from 19 witnesses—is genuinely necessary to the proceedings, or explain which specific areas of inquiry are genuinely needed from which specific BPAs. Moreover, the Response noted, the individual knowledge of each BPA has no bearing on the ultimate question to be decided by the jury: Whether Plaintiff, by his own acts or omissions, violated Texas Penal Code § 20.41. AR000060. By way of example, the Response discussed Plaintiff's request for testimony about each BPA's training, which Plaintiff supported by explaining that state prosecutors are expected to argue that Arredondo failed to respond as trained. AR000060–61. But, the Response noted, BPA's testimony about their training as *federal* officers would be irrelevant to assessing whether

Arredondo acted in accordance with his training as a *local* law enforcement officer—a topic better addressed through testimony from Uvalde Consolidated Independent School District officers. AR000061.

Third, the Response explained that providing the 19 BPAs for testimony in Plaintiff's state court criminal trial—making them the first resort for information readily available from other sources—would unduly interfere with the orderly conduct of CBP business. AR000061 (citing 19 C.F.R. § 103.23(b)(8)). Providing this testimony "would require CBP to make all 19 officers available before and during the trial, pulling them off duty, incurring travel costs, and lost work hours, which negatively impacts CBP operations and national security." AR000061.

Finally, the Response noted that many of the open-ended and ill-defined areas of inquiry appeared likely to cross into confidential law enforcement techniques and procedures, such as CBP training and tactics, not appropriate for disclosure in a public trial. AR000061 (citing 19 C.F.R. § 103.23(b)(5)). And, the Response explained, since CBP is not a party to Plaintiff's prosecution in state court, the agency has no official interest or information in that case. *Id.* (citing 19 C.F.R. § 103.23(b)(9)).

### 3.   Plaintiff's Complaint

Plaintiff's Complaint challenges CBP's analysis of the 19 C.F.R. § 103.23(a)(3) factors on three primary grounds. First, Plaintiff argues that the *Touhy* denial did not separately analyze its reasons for denying Plaintiffs' requests for testimony from each of the 19 BPAs. ECF No. 1 at ¶ 28. Second, Plaintiff challenges the Response's application of the Section 103.23(a)(3)(ii)–(iii) genuine necessity and unavailability from other sources factors, arguing that each of the BPAs are the only admissible source of testimony about their individual knowledge and reasons for their actions. ECF No. 1 at ¶¶ 29–43. Third, Plaintiff argues that he satisfied his obligation under

19 C.F.R. § 103.23(a)(3)(iv) to "describe[] with particularity" the information that he has requested because he has named the 19 BPAs, articulated the topics he anticipates questioning them about at his trial, and has summarized the testimony he expects they will give. ECF No. 1 at ¶¶ 44–52.

In addition to arguments focused on the Section 103.23(a) "general consideration" factors, Plaintiff advances two arguments focused on the Section 103.23(b) factors that prohibit disclosure. Plaintiff argues that providing testimony from the 19 BPAs would not unduly burden CBP within the meaning of Section 103.23(b)(8), since BPAs regularly testify in criminal cases as part of their job duties, *Id.* at ¶¶ 53–56. Finally, Plaintiff argues that he does not seek confidential information from CBP within the meaning of Section 103.23(b)(3), because they seek information only "to the extent that it informs the jury whether Mr. Arredondo is responsible for the actions taken by the CBP employees and any delay in their response[.]" ECF no. 1 at ¶ 58. Plaintiff further argues that, as a criminal defendant, he is constitutionally entitled to receive exculpatory information from his prosecutor. ECF No. 1 at ¶ 60.

Plaintiff asserts two claims. In the first, he challenges CBP's denial of his *Touhy* request under the APA and further argues that CBP's *Touhy* regulations are invalid since the statutory authority under which they were promulgated, 5 U.S.C. § 301, does not authorize withholding information from the public or limiting the availability of records to the public. ECF No. 1 at ¶¶ 66–79. In the second, Plaintiff argues that CBP's Touhy denial violates his rights as a criminal defendant under the Sixth and Fourteenth Amendments to the United States Constitution. ECF No. 1 at ¶¶ 80–94. Plaintiff seeks a court order compelling the 19 BPAs to testify at his criminal trial. *Id.* at ¶ 95.

## LEGAL STANDARDS

### A. *Touhy* Regulations

Federal agencies are authorized by Congress to promulgate regulations—commonly known as *Touhy* regulations—that govern disclosures of information and authorizations of testimony by federal employees and agents. *See generally CF Indus., Inc. v. Dep't of Just. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 692 F. App'x 177, 181 & n.8 (5th Cir. 2017) (citing 5 U.S.C. § 301 and *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951)).

CBP's *Touhy* regulations, codified at 19 C.F.R. §§ 103.21–103.27, prohibit disclosure of CBP information or testimony by CBP employees in their official capacities absent prior authorization from CBP's Chief Counsel. 19 C.F.R. §103.22(a). Parties who request such testimony bear an "initial burden" to produce an affidavit or statement that "sets forth a summary of the . . . testimony sought and its relevance to the proceeding"—a summary that "limit[s] . . . the scope of the demand[.]" 19 C.F.R. § 103.22(c). And testimony may be authorized only where "in the judgment of the Chief Counsel, [such testimony is] appropriate under the factors specified in § 103.23(a)" and "[n]one of the factors specified in § 103.23(b) of this subpart exist with respect to the demanded . . . testimony." 19 C.F.R. § 103.22(f).

Under Section 103.23(a), the CBP *Touhy* regulations enumerate the factors that must be considered by the Chief Counsel in weighing whether to authorize CBP testimony. Those include, among others,

> Whether the requesting party has demonstrated that the information requested is . . . . [g]enuinely necessary to the proceeding, i.e., a showing of substantial need has been made; [u]navailable from other sources; and [r]easonable in its scope, i.e., the documents, information or testimony sought are described with particularity."

---

19 C.F.R. § 103.23(a)(3)(ii)–(iv).

And, under Section 103.23(b), the CBP *Touhy* regulations enumerate factors that prohibit the Chief Counsel from authorizing CBP testimony, which include where such disclosure "would unduly interfere with the orderly conduct of CBP business" or where "CBP has no interest . . . regarding the matter in which disclosure is sought[.]" 19 C.F.R. § 103.23(b)(8)–(9).

### B. APA Review Standards

Judicial review of an agency's denial of a *Touhy* request is governed by the Administrative Procedure Act (APA). *CF Indus.*, 692 F. App'x at 181 & n.3. Under APA review, a *Touhy* denial may be set aside "only if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"—a "narrow" standard under which the Court assesses whether the agency reached a "decision . . . based on a consideration of the relevant factors[.]" *Shrimpers & Fishermen of the RGV v. United States Army Corps of Eng'rs*, 56 F.4th 992, 996 (5th Cir. 2023) (internal quotation marks omitted).

"In accordance with this 'narrow standard of review,' a court 'is not to substitute its judgment for that of the agency' but rather determine 'whether there has been a clear error of judgment.'" *Gulluni v. Levy*, 85 F.4th 76, 82 (1st Cir. 2023) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009)); *see also CF Indus.*, 692 F. App'x at 181. So long as the agency's path to its decision "may reasonably be discerned[,]" an agency's denial of a *Touhy* request should be upheld. *Shrimpers*, 56 F.4th at 996; *see also St. Vincent Med. Grp.*, 71 F.4th at 1076 ("Put another way: unless the [agency] unreasonably applies its *Touhy* regulations, a federal court is powerless to compel its participation in state court discovery."). And throughout the Court's analysis, the agency's interpretation of its own regulations "is controlling unless it is

'plainly erroneous or inconsistent with the regulation.'" *Luminant Generation Co. LLC v. U.S. E.P.A.*, 714 F.3d 841, 851 (5th Cir. 2013) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).

## ARGUMENT

Plaintiff cannot show that CBP's denial of his Touhy request was an unreasonable application of CBP's *Touhy* regulations, cannot show that those regulations are invalid, and cannot show that his constitutional rights as a criminal defendant require a federal agency that is not prosecuting him to provide him with information. CBP reasonably analyzed Plaintiff's *Touhy* request under the Section 103.23(a) "general considerations" factors and reasonably concluded that those factors weighed against granting the Request. Additionally, CBP reasonably found that multiple of the mandatory nondisclosure factors found at Section 103.23(b) mandated denial of Plaintiff's *Touhy* request. Here, like in *CF Industries*, "[t]he record reflects that [CBP] recognized and considered the applicable *Touhy* regulations in making its decision"—that it "disclosed a significant amount of investigative material and, in denying certain requests, . . . articulated its reasons for doing so." *CF Indus.*, 692 F. App'x at 182. CBP's denial of Plaintiff's *Touhy* request should be affirmed.

### A. CBP Reasonably Found That The Section 103.23(a) "General Considerations" Factors Weigh Against Disclosure

The *Touhy* regulations instruct that, when considering whether to grant or deny a request for agency information, the Chief Counsel should consider factors including whether the information requested is:

- Relevant and material to the action pending;

- Genuinely necessary to the proceeding—that is, whether a showing of substantial need has been made;

- Unavailable from other sources; and

- Reasonable in its scope—that is, whether the documents, information, or testimony sought are described with particularity.

19 C.F.R. § 103.23(a)(3)(i)–(iv). The Administrative Record reflects that, in its response to Plaintiff's Touhy request, CBP "considered the appropriate factors under the governing law and articulated a rational relationship between the facts found and the choice made." *Arlington*, 668 F.3d at 260. Particularly under the APA's "narrow" standard of review, *10 Ring Precision*, 722 F.3d at 723, the agency's decision should be upheld.

First, the agency explained why the Request did not show genuine necessity or a substantial need for the information requested. Most significantly, CBP has already released the information that Plaintiff sought in the report issued by its Office of Professional Responsibility. *See* AR000060 (describing the OPR Report). As the Response noted, the availability of this information from other sources is underscored by Plaintiff's Request, which itself summarized the testimony expected from each BPA based on the investigative reports already in Plaintiff's possession. *See* AR000060; AR000035–53. (summaries of "testimony sought" for each BPA).

Next, the Response noted, Plaintiff had not shown genuine necessity, substantial need, or unavailability from other sources as to its requests for fact and opinion testimony about the reasonableness of Arredondo's conduct. AR000060–61. To the extent Plaintiff seeks fact testimony, that fact testimony would be available from any number of the Texas state and local law enforcement officers who were present on the scene who witnessed the same events witnessed by the BPAs. AR000060. And insofar as the request sought expert opinion testimony on subjects like "what . . . a 'reasonable officer' would or should have done under similar circumstances[,]" the command relationship between federal agents and local law enforcement officers, or the relative training of the officers on the scene, such expert testimony would be

available from any number of current and former law enforcement officers qualified to testify as experts on those subjects. AR000060. In short, the Response noted, the Request "place[s] CBP as the first resort for the information sought, seeking the use of CBP resources to obtain information that is readily available through Texas state and local law enforcement officers and the OPR Report[.]" AR000060–61.

And, as the Response explained, Plaintiff failed to show either the relevance of or any genuine necessity or substantial need for the broad array of testimony requested. The Request speculates about various theories of prosecution Arredondo may seek to rebut at trial, such as that he delayed the law enforcement response in various ways, caused CBP agents to refrain from taking action, and failed to identify the situation as an active shooter scenario. AR000053–55. But, as the Response explains, Plaintiff does not explain why testimony from the BPAs would be relevant or material, since the content of that testimony is already available through the CBP OPR Report and the Texas Rangers investigative summaries; since Arredondo's conduct will be evaluated based on his training and role as a local law enforcement officer, not under federal standards; and where the ultimate question before the jury is whether Arredondo's own actions and omissions violated Texas Penal Code § 20.41. AR000060–61. This is especially so since CBP has equally denied similar requests for testimony submitted by Arredondo's prosecutors, *see Mitchell v. CBP*, 2:25-cv-00033-AM-JAC—meaning that Arredondo will not be placed in the position of needing to rebut testimony from any BPA about his actions or omissions. At most, Plaintiff's speculation about how BPAs might testimony about theories advanced by his prosecutors points to information of marginal relevance—information that, even if relevant, does not indicate a substantial need exists for live BPA testify, since the substance of that testimony is already in Arredondo's possession in other formats.

In particular, the publication of the CBP OPR Report forecloses any showing of substantial need for live testimony. The CBP OPR Report discusses, in extensive detail, "the actions of CBP personnel in accordance with applicable laws, policies, and agency training." *See* AR000118. This discussion includes information about CBP's training on federal agents' authority relative to state and local law enforcement incident commanders, the perception of command and control by the specific BPAs who responded to Robb Elementary School, and how that perception affected CBP's actions on the scene. The CBP OPR Report specifically addresses the actions of the Border Patrol Agents who breached the classroom door and neutralized the shooter—including the same agents from whom Plaintiff now seeks testimony.

 Plaintiff suggests that live testimony is the only source of information on these topics that would be admissible in state court. ECF No. 1 at ¶¶ 36–37. But CBP's *Touhy* regulations do not require the agency to provide responses in a format admissible in state court. *See, e.g.*, *St. Vincent Med. Grp., Inc. v. United States Dep't of Just.*, No. 1:22-MC-00011-JPH-MG, 2022 WL 16715468, at *6 (S.D. Ind. Oct. 27, 2022) (finding no showing of substantial need for live testimony where the requestor's "purported need for testimony . . . is to avoid or minimize hearsay objections that may be raised to bar admission of that other evidence"), *aff'd,* 71 F.4th 1073 (7th Cir. 2023). And Plaintiff does not explain why the CBP OPR Report or other similar sources would not fall within a hearsay exception such as Texas Rule of Evidence 803(8). *See e.g.*, *Fort Bend Cent. Appraisal Dist. v. Am. Furniture Warehouse Co.*, 630 S.W.3d 530, 537 (Tex. App.—Hous. [1st Dist.] 2021).

Plaintiff argues that no one other than each of the BPAs "can provide admissible testimony about what [he] personally knew or did not know" or his own "rationale and reasons for taking certain actions or failing to take certain actions" during the shooting. ECF No. 1 at ¶¶

36–37. But in advancing a global request for all individual observations of each witness, Plaintiff fails to describe with particularity the information sought, fails to show substantial need for this global request for all information known by these witnesses, and misapplies the applicable standards under *Touhy* and the APA. Plaintiff's argument—that every BPA who was on the scene must have *some* unique information and must therefore have some obligation to testify—cannot reconcile with the applicable *Touhy* regulations, which require a requestor to "describe[] with particularity" the documents, information, or testimony they seek. 19 C.F.R. § 19.103.22(a)(3)(iv).

And insofar as Plaintiff claims an entitlement to this information because he is a criminal defendant, this argument fails because neither CBP nor the federal government are involved in prosecuting him. CBP's *Touhy* regulations prohibit disclosure where "CBP has no interest . . . regarding the matter in which disclosure is sought[,]" 19 C.F.R. § 103.23(b)(9), and a state court prosecutor's *Brady* and *Giglio* obligations do not entitle the prosecutor or a state court defendant to a *Touhy* disclosure. *Gulluni*, 85 F.4th at 81.

The standard governing the agency's release of information is not whether its officers have unique information to provide. Rather, "[a]t bottom, whether to comply with a state court subpoena 'is essentially a policy decision about the best use of the agency's resources.'" *St. Vincent Med. Grp.*, 71 F.4th at 1076 (quoting *COMSAT*, 190 F.3d at 278). The factors that govern that policy decision include not only whether the federal agents' testimony could provide information that is "[u]navailable from other sources"; but also whether that unique information is "[g]enuinely necessary to the proceeding"; whether "a showing of substantial need has been made"; and whether the testimony sought is "described with particularity." 19 C.F.R. § 103.23(a)(3). And disclosure flatly "will not be made" where CBP's Chief Counsel reasonably

determines that "CBP has no interest . . . regarding the matter in which disclosure is sought" or that such disclosure "would unduly interfere with the orderly conduct of CBP business[.]" 19 C.F.R. § 103.23(b)(8)–(9). Under CBP's *Touhy* regulations, disclosure is not required in every case where CBP's officers are involved in events that later lead to a state court prosecution.

### B. CBP Reasonably Found That The Section 103.23(b)'s "[c]ircumstances under which disclosure will not be made" Required Denial of Arredondo's Request

In addition to the Section 103.23(a) "general consideration" factors, Section 103.23(b) sets out 11 "[c]ircumstances under which disclosure will not be made." 19 C.F.R. § 103.23(b). The agency Response to Arredondo's *Touhy* request identified three of those circumstances that are relevant here—where:

- "Disclosure would reveal investigatory records compiled for law enforcement purposes, interfere with enforcement proceedings, or disclose investigative techniques and procedures;" 19 C.F.R. § 103.23(b)(5);

- "Disclosure would unduly interfere with the orderly conduct of CBP business;" *id.* at (b)(8); and

- "CBP has no interest, records, or other official information regarding the matter in which disclosure is sought;" *id.* at (b)(9).

CBP's *Touhy* denial reasonably found that those circumstances prohibit authorization of the broad array of testimony Arredondo requested. AR000061. As to the (b)(5) factor, disclosure of investigative techniques and procedures, the Response noted that many of the areas of inquiry were framed in broad, open-ended terms, meaning that approval of the *Touhy* request would require the BPAs to testify under oath in state court about topics like their sources of information about the shooting; their coordination internally within CBP and with other law enforcement agencies; and the factors they consider in responding to an incident like the shooting at Robb

Elementary School. AR000033–35. To the extent not already discussed in the CBP OPR Report and other investigative records, CBP reasonably found these open-ended topics of questioning likely to intrude into investigative techniques and procedures such that disclosure would be prohibited under Section 103.23(b)(5). AR000061.

As to Section 103.23(b)(8), interference with the orderly conduct of CBP business, the Response reasonably found that, since approval of the request would require CBP to make 19 BPAs (including at least one supervisory agent) "available before and during the trial, pulling them off duty, incurring travel costs, and lost work hours," approval of the request would unduly interfere with the orderly conduct of CBP business—especially where the information to be obtained through their testimony is already available from other sources. AR000061.

Finally, as to Section 103.23(b)(9), the Response noted that CPB is not a party and has no involvement in Arredondo's state court prosecution. CBP has no official interest or information in the prosecution itself, and insofar as CBP has information about the events the prosecution is based on, that information has already been publicly released in the CBP OPR report to the extent feasible and permitted by law.  For those reasons, the Response reasonably found that Section 103.23(b)(9), also, prohibited approval of Arredondo's *Touhy* request.

* * *

The Administrative Record shows that, as to the Section 103.23(a) "general consideration" factors, CBP's Chief Counsel identified the relevant factors and reasonably applied them to Plaintiff's Request. *Shrimpers*, 56 F.4th at 996. In this Court's review of that analysis, it should "not . . . substitute its judgment for that of the agency' but rather determine 'whether there has been a clear error of judgment.'" *Gulluni*, 85 F.4th at 82. There has not. Rather, since the agency's path to its decision "may reasonably be discerned[,]" its denial of

Arredondo's *Touhy* request should be upheld. *Shrimpers*, 56 F.4th at 996; *see also St. Vincent Med. Grp.*, 71 F.4th at 1076.

### C. CBP's Touhy Regulations Are Valid Under 5 U.S.C. § 301

Plaintiff argues that, since 5 U.S.C. § 301 authorizes the promulgation of *Touhy* regulations but "does not authorize withholding information from the public or limiting the availability of records to the public[,]" the CBP *Touhy* regulations are invalid to the extent that they allow the denial of a *Touhy* request. ECF No. 1 at ¶¶ 71–74, 86–88. This claim misunderstands the nature of the *Touhy* regulations and runs contrary to controlling law from the Fifth Circuit. The Fifth Circuit has recognized that "[f]ederal agencies are permitted to promulgate regulations, known as *Touhy* regulations, governing the disclosure of information pursuant to a request" and that those regulations may "prohibit disclosures" of certain categories of information under certain circumstances. *CF Indus., Inc. v. Dep't of Just. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 692 F. App'x 177, 181 (5th Cir. 2017) (affirming denial of request under DOJ *Touhy* regulations); *see also State v. Lueck*, No. 416CV00130ALMCAN, 2016 WL 11774020, at *5 (E.D. Tex. May 6, 2016) ("numerous other courts, including the Fifth Circuit, have applied *Touhy* regulations to restrict or deny the testimony of agency employees in criminal cases."). While 5 U.S.C. § 301 does not establish an independent privilege against the disclosure of government records, it codifies the authority of agencies "to prescribe regulations not inconsistent with law for 'the custody, use, and preservation of the records, papers, and property appertaining to'" the agency, *Touhy*, 340 U.S. at 468—including the discretion "to control the dissemination of information." *United States v. Williams*, 170 F.3d 431, 433 (4th Cir. 1999) (internal quotation marks omitted). Section 301 does not create an independent basis for withholding information, but it does not follow that agencies are prohibited from doing so, that

regulations allowing nondisclosure are invalid, or that agencies are required to grant every *Touhy* request they receive. On the contrary, the regulations promulgated pursuant to 5 U.S.C § 301 "are valid and can lawfully bar employees from testifying." *United States v. Blair*, 174 F.4th 1309, 1318 (11th Cir. 2026).

### D. Arredondo Is Not Entitled to Receive Exculpatory Information from CBP Where The Federal Government Is Not Prosecuting Him

Arredondo asserts that, as a criminal defendant, he is constitutionally entitled to receive exculpatory information, and that this entitlement "outweighs CBP's privilege or desire to withhold the testimony" he has requested. ECF No. 1 at ¶¶ 60, 78, 93. But neither CBP nor the federal government are prosecuting Arredondo, and where the United States is not a party and "[a federal agency] ha[s] no role in [a] state court prosecution[,]" the state prosecutor's constitutional disclosure obligation "does not give rise to a constitutional duty by [the federal agency]" under *Brady* or *Giglio*, or similar state law disclosure requirements. *Gulluni v. Levy*, 85 F.4th 76, 81 (1st Cir. 2023) ("Surely, DOJ's disclosure to [state prosecutor] would ease compliance with his constitutional obligations, but [state prosecutor's] ability to comply with said obligations does not turn on whether DOJ discloses the requested information.").

There is no categorical rule that *Touhy* requests from a criminal defendant must be granted, either because of their rights under the Sixth Amendment or for any other reason. On the contrary, "numerous other courts, including the Fifth Circuit, have applied *Touhy* regulations to restrict or deny the testimony of agency employees in criminal cases." *State v. Lueck*, No. 416CV00130ALMCAN, 2016 WL 11774020, at *5 (E.D. Tex. May 6, 2016); *see also People v. Adams*, 86 Misc. 3d 472, 476 (N.Y. Sup. Ct. 2025) ("As in the *Brady* context, [state prosecutors] cannot be charged with failure to disclose materials they themselves could not obtain from law enforcement officers answerable to another sovereign." (quoting *People v. Santorelli*, 741

N.E.2d 493 (Ct. App. N.Y. 2000)).

And though Plaintiff suggests that some of the information he hopes to elicit CBP might be mitigating or exculpatory, and claims it would be admissible only through live testimony, he does not address why the CBP OPR Report or other similar sources would not fall within a hearsay exception such as Texas Rule of Evidence 803(8). *See e.g.*, *Fort Bend Cent. Appraisal Dist. v. Am. Furniture Warehouse Co.*, 630 S.W.3d 530, 537 (Tex. App.—Hous. [1st Dist.] 2021).

### E. Even If The Court Finds An APA Violation, The Proper Remedy Is A Remand for Further Consideration

Finally, even if the Court finds that CBP's decision in this matter did violate the standards set out in the APA, the Court may not, as Plaintiff requests, issue an order compelling CBP to provide the testimony. Rather, if the Court were to set aside CBP's *Touhy* decision, the exclusive relief available is remand of the matter to CBP for further administrative review consistent with APA standards and the Court's decision. *BizCapital Business & Indus. Development Corp. v. Comptroller of the Currency of the United States*, 467 F.3d 871 (5th Cir. 2006) (citing *FEC v. Akins*, 524 U.S. 11, 25 (1998) ("If a reviewing court agrees that the agency misinterpreted the law, it will set aside the agency's action and remand the case - even though the agency (like a new jury after a mistrial) might later, in the exercise of its lawful discretion, reach the same result for a different reason.")); *see also Murphy v. United States Dep't of Veterans Affs.*, No. 24-CV-03127-NYW, 2025 WL 1688117, at *6 (D. Colo. June 16, 2025).

* * *

When an agency is not a party to an action, "[a]t bottom, whether to comply with a state court subpoena 'is essentially a policy decision about the best use of the agency's resources.'" *St. Vincent Med. Grp.*, 71 F.4th at 1076 (quoting *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269,

278 (4th Cir. 1999)).

The Court's role under the APA is not to apply the agency's *Touhy* standards in the first instance, but to review whether the agency's application of those standards was arbitrary, capricious, an abuse of discretion, or not in accordance with law. This is a "narrow" standard under which the Court "must be mindful 'not to substitute [its] judgment for that of the agency." *10 Ring Precision, Inc.*, 722 F.3d at 723.

Here, the agency considered each component of Plaintiff's request and explained why multiple factors of the Section 103.23(a) general consideration factors weighed against disclosure and multiple of the Section 103.23(b) factors prohibited the form of disclosure Plaintiff requested. However, CBP also provided Plaintiff and the public with substantial amounts of the information they sought in other formats, particularly the CBP OPR Report. In so doing, CBP considered the law, made a reasoned decision, and explained itself. The Court should enter a summary judgment affirming CBP's denial of Plaintiff's *Touhy* request.

If, alternatively, the Court finds that CBP's denial of Plaintiff's request is arbitrary and capricious, the Court should remand Plaintiff's request for further consideration by CBP's Chief Counsel.

### CONCLUSION

The Court should enter a summary judgment for Defendant.

Dated: June 23, 2026                    Respectfully submitted,

                                        **Justin R. Simmons**
                                        United States Attorney

                          By:    /s/ *Robert D. Green*
                                 **Robert D. Green**
                                 Texas Bar No. 24087626
                                 Assistant United States Attorney
                                 601 N.W. Loop 410, Suite 600
                                 San Antonio, Texas 78216
                                 (210) 384-7362 (phone)
                                 (210) 384-7312 (fax)
                                 robert.green3@usdoj.gov

                                 ***Attorneys for Defendant***