IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DEL RIO DIVISION

| | | |
|---|---|---|
| PETE ARREDONDO, *Plaintiff*, | §<br>§<br>§<br>§<br>§ | |
| V. | §<br>§<br>§ | CASE NO.: 2:26-CV-00018-AM |
| UNITED STATES CUSTOMS AND BORDER PROTECTION, *Defendant*. | §<br>§<br>§<br>§ | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Mr. Arredondo challenges agency action of Defendant United States Customs and Border Protection (hereinafter "Defendant" or "CBP") under the Administrative Procedure Act (APA), 5 U.S.C. § 701, *et seq*. This action raises both statutory and constitutional claims. Defendant filed a Motion for Summary Judgment on the Administrative Record on June 23, 2026. Mr. Arredondo timely files this Response to Defendant's Motion for Summary Judgment and Cross-Motion for Summary Judgment. Mr. Arredondo respectfully requests that this Court enter summary judgment in his favor.

I.    **Standards of Review**

Defendant's Motion for Summary Judgment advocates for a narrow and highly deferential standard of review in which it would have this Court rubber stamp the agency's conclusory and unreasoned denial of Mr. Arredondo's request for the availability of CBP personnel to testify in Mr. Arredondo's favor at his state court criminal trial.

The deferential standard of judicial review that Defendant advances all rely on cases

decided in the post-*Chevron* but pre-*Loper Bright Enters.* era, which can neither be reconciled with the plain language of the APA nor the overruling of *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 104 S. Ct. 2778 (1984) by the United States Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024).

On questions of fact and policy making only, the APA does require that judicial review be deferential: "Section 706 *does* mandate that judicial review of agency policymaking and factfinding be deferential. See §706(2)(A) (agency action to be set aside if 'arbitrary, capricious, [or] an abuse of discretion'); §706(2)(E) (agency factfinding in formal proceedings to be set aside if 'unsupported by substantial evidence')." *Loper Bright Enters.*, 603 U.S. at 392 (quoting 5 U.S.C. § 706). Nevertheless, even before *Loper Bright Enters.*, whether Defendant's agency *Touhy* denial is contrary to Mr. Arredondo's right to compel material and favorable witnesses in his favor is a claim that is constitutional in nature and is a claim that Mr. Arredondo has standing to assert, which gives rise to *de novo* review. "Generally, § 706(2)(B)'s constitutional right standard applies to *Touhy* denials that encompass claims that are substantially constitutional or constitutional in nature, whereas § 706(2)(A)'s arbitrary and capricious standard applies to agency decisions that do not substantially concern constitutional issues." *Gulluni v. Levy*, 85 F.4th 76, 80 (1st Cir. 2023).

The questions raised in this matter are mostly questions of law, such as: Is the Defendant's denial of Mr. Arredondo's *Touhy* request in violation of or in excess of statutory authority? (Yes). And do federal regulations trump Mr. Arredondo's federal constitutional rights to compulsory process and to present a complete defense? (No.) And is the Defendant's denial of Mr. Arredondo's request to have material and favorable defensive witnesses made available to testify in his defense in a state court criminal proceeding contrary to constitutional right, power,

or privilege? (Yes.) And on questions of law, Defendant is entitled to no deference.

Congress enacted the APA in 1946 as a check on administrative agencies, and it "delineates the basic contours of judicial review" of agency action. *Loper Bright Enters.*, 603 U.S. at 391. The plain language of the statute requires this Court—not the Defendant agency—to "decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." 5 U.S.C. § 706.

> The APA thus codifies for agency cases the unremarkable, yet elemental proposition reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying their own judgment. It specifies that courts, not agencies, will decide "*all* relevant questions of law" arising on review of agency action, §706 (emphasis added)—even those involving ambiguous laws—and set aside any such action inconsistent with the law as they interpret it. And it prescribes no deferential standard for courts to employ in answering those legal questions.

*Loper Bright Enters.*, 603 U.S. at 391-92. "[B]y directing courts to 'interpret constitutional and statutory provisions' without differentiating between the two, Section 706 makes clear that agency interpretations of statutes—like agency interpretations of the Constitution— are *not* entitled to deference." *Id*. at 392.

## II.      The *Touhy* regulations don't authorize the withholding of evidence in this case.

While the *Touhy* regulations provide a framework and a procedural process for Mr. Arredondo to request information, they do not authorize Defendant to withhold testimony from the requested witnesses in this specific case.  CBP's regulations for production or disclosure of information in federal, state, local, and foreign proceedings are promulgated under the authority of 5 C.F.R. § 301.

5 U.S.C. § 301 specifically states it "does not authorize withholding information from the public or limiting the availability of records to the public." CBP's Touhy regulations, promulgated under 6 C.F.R. Part 5 and 19 C.F.R. Part 103, are contrary to law to the extent they

authorize withholding material and favorable testimony from Mr. Arredondo when that denial is based on the regulations and is not based on any other independent privilege or other law sufficient to outweigh Mr. Arredondo's right to "every man's evidence" that would grant Defendant authority to withhold evidence in this case.:

> While the decision in *Touhy* recognized the authority of the heads of government agencies to enact regulations to provide an orderly process for handling requests for information and evidence addressed to them, neither *Touhy* nor the Federal Housekeeping Act stands for the proposition that the government is broadly exempt from providing evidence. Indeed, the Federal Housekeeping Act—the current legal authority under which *Touhy* regulations are promulgated—explicitly rejects the notion that the government is exempt from providing evidence, saying "This section does not authorize withholding information from the public or limiting the availability of records to the public." 5 U.S.C. § 301. There must be a good reason for an agency to withhold its evidence, and absent such a good reason, doing so is arbitrary, capricious, and an abuse of discretion.

*Brown v. U.S. VA*, No. 2:17-cv-1181-TMP, 2017 U.S. Dist. LEXIS 134556, at *16-17 (N.D. Ala. 2017). Here, Defendant offers no good reason to withhold its evidence, and certainly no reason that outweighs Mr. Arredondo's constitutional right to compel material and favorable witnesses so his right to present a complete defense is vindicated.

Mr. Arredondo is entitled to material and favorable evidence in his favor at a criminal trial. The Supreme Court, quoting Dean Wigmore, has recognized, "For more than three centuries it has now been recognized as a fundamental maxim that the public (in the words sanctioned by Lord Hardwicke) has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving, and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule." *United States v. Bryan*, 339 U.S. 323, 331 (1950) (quoting Wigmore, Evidence (3d ed.) § 2192).

Defendant's response to Mr. Arredondo's 58-page request with 30-page affidavit was a brief letter with only two pages directly addressing Mr. Arredondo's requests, which lacked any substantive analysis or specific support. It provided sweeping and unsupported generalities to all 19 requested witnesses with no individualization and no rationale articulated for its conclusory statements, and where sparse rationale was included, it misconstrued Mr. Hefti's affidavit, misstated the fundamental questions for the jury to consider in Mr. Arredondo's criminal trial, and misstated Mr. Arredondo's claims and theories of defense. AR000060 – AR000061. It certainly claimed no exceptional exemptions to justify a denial of complying with its "general duty to give what testimony one is capable of giving." *Bryan*, 339 U.S. at 331.

Defendant claims three mandatory regulatory justifications for denying Mr. Arredondo's request that are all conclusory without providing rationales or connections for those decisions that are rooted in the record. AR00061. When no reason for an agency's decision can be discerned, it must be reversed. *Judulang v. Holder*, 565 U.S. 42, 64 (2011). When the agency fails to articulate a rational relationship between the facts and the choice made, the decision is arbitrary and capricious. *Harris v. United States*, 19 F.3d 1090, 1096 (5th Cir. 1994).

Citing 19 C.F.R. § 103.23(b)(8), Defendant claims that providing the identified individuals for trial would unduly interfere with the orderly conduct of CBP business because the time involved for the witnesses would negatively impact CBP operations and national security. AR00061. However, CBP makes no effort to articulate how Mr. Arredondo's request would impact CBP operations and national security, no rationale for how that impact outweighs Mr. Arredondo's right to the evidence, and points to no facts in the record to justify its decision.

Citing 19 C.F.R. § 103.23(b)(5), Defendant claims Mr. Arredondo's request *appears* to seek confidential law enforcement techniques and procedures which, "are not appropriate for

disclosure." AR000061. In the same paragraph, Defendant admits it's unclear but that questions about "CBP training and tactics *may* result in testimony *related to* confidential law enforcement techniques and procedures." AR000061 (emphasis added). Defendant claims no independent law enforcement or other privilege to support its conclusion and denial, it does not delineate what information would or would not be appropriate for disclosure to allow a more tailored request, and it does not provide any rationale for the Court to discern its reasoning for its conclusion. Defendant even admits it is unclear from the request that any confidential law enforcement information is sought. AR000061. Additionally, Defendant repeatedly claims in its denial letter and its own Motion for Summary Judgment that the testimony requested by Mr. Arredondo is readily available from other sources and has already been released in its Office of Professional Responsibility Investigative Operations Directorate Case Closing Report (the CBP OPR Report). The testimony cannot be both confidential and released by Defendant and available to the public.

Citing 19.C.F.R § 103.23(b)(9), CBP also claimed in its denial letter—with no explanation or reasoning—that Defendant has no official interest or information regarding this matter solely because it's not a party to the litigation. Defendant's assertion that CBP has no interest or other official information in reliance on 19 C.F.R. § 103.23(b)(9) to justify a denial of the request for testimony merely because it is not a party is an assertion and rationale unsupported by any law, including the regulation relied upon by Defendant. 19 C.F.R. § 103.23(b)(9) makes no mention of party status at all. "The fact that the [agency] has no direct or substantial interest in the private litigation between the plaintiff and the [defendant] does not establish a reason for refusing to provide factual evidence relevant and material to that litigation. The same can be said of all disinterested witnesses. A witness's disinterest in someone else's lawsuit does not absolve him of providing his evidence." *Brown v. U.S. VA*, No. 2:17-cv-1181-

TMP, 2017 U.S. Dist. LEXIS 134556, at *17 (N.D. Ala. 2017). If it's true in a civil case between private litigants that a federal government agency has a duty to provide factual evidence relevant and material to the litigation, how much more so is it true in a criminal trial where Mr. Arredondo's constitutional rights and freedom are at stake?

Again Defendant, "offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," making its denial arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Defendant clearly has information and an interest in the matter, even if not a party. Defendant's own administrative record and CBP OPR report demonstrate it has a wealth of official information on the matter. Defendant's 188 personnel made up the largest contingent of law enforcement officers by far at Robb Elementary School on the day in question.

Given that Defendant *does* assert it has no official interest or information regarding this matter, AR000061, a dubious claim, its decision to deny the availability of the requested witnesses would still be arbitrary, capricious, an abuse of discretion, and contrary to law even if true. If, as Defendant asserted in its response to Mr. Arredondo's *Touhy* request, that CBP truly has no official information or interest in the matter, the only way to reconcile that with the evidence in the record is because the CBP personnel who are requested to testify were not acting in the scope of their employment and are subject to testify as ordinary citizen witnesses. The CBP OPR concluded, "Over 100 CBP law enforcement officials responded to the school in a variety of capacities, and none of them were able to explain to OPR under what authority they were acting on May 24, 2022," the date in question. AR000121. And when CBP officers or agents respond to support state and local law enforcement without clear statutory authority or a

valid Memorandum of Understanding as they did at Robb Elementary school, AR000118 –

AR000122, "Legally, CBP officers/agents acting to enforce a state or local law do so as private

citizens without any guarantee of federal representation." AR000120.

Defendant itself must acknowledge, "A bedrock principal of constitutional policing is

ensuring that actions taken by law enforcement officers are within their statutory authority and in

accordance with the principles set for the in the U.S. Constitution." AR000121. When, as here,

"CBP law enforcement officers lacked explicit authority to respond to the incident at Robb

Elementary School to assist state and local authorities," AR000122, the regulatory provisions in

Subpart B of 19 CFR Part 103 that Defendant relies on to deny Mr. Arredondo's *Touhy* request

provide them no support at all. That is because, "Nothing in the subpart is intended to impede the

appropriate disclosure of non-CBP information by CBP employees in any proceeding in which

they are a party or witness solely in their personal capacities." 19 C.F.R. § 103.21(g). If, as the

administrative record indicates, CBP personnel lacked explicit authority to respond to the

incident at Robb Elementary and instead responded as private citizens, Defendant's denial of Mr.

Arredondo's *Touhy* request is arbitrary, capricious, and an abuse of discretion because it is

unsupported by the facts and administrative record, and it's contrary to law because the

regulations it relies on are inapplicable and cannot impede the availability of CBP witnesses in

their personal capacities.

**III.    CBP failed to consider Mr. Arredondo's claim that he is entitled to the requested testimony under the Sixth and Fourteenth Amendments to the United States Constitution.**

A failure to disclose information by invoking *Touhy* regulations violates a criminal

defendant's right to present a complete defense where the defendant shows that the testimony

will be both material and favorable to his defense. *United States v. Guild*, 341 F. App'x 879, 886

(4th Cir. 2009) (citing *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982). Mr. Hefti's

sworn affidavit as part of Mr. Arredondo's *Touhy* request, described with sufficient particularity the testimony sought and how that testimony would be both material and favorable to Mr. Arredondo's defense in his State court criminal trial. AR000029 – AR000058. Mr. Hefti claimed that the testimony was necessary to vindicate Mr. Arredondo's rights to due process; compulsory process, which is at its heart about the right to present a complete defense; the effective assistance of counsel; and a fair, speedy, and public trial. AR000058. Defendant failed to consider Mr. Arredondo's constitutional rights, powers, and privileges when issuing its denial letter. The denial of Mr. Arredondo's request fails to even mention Mr. Arredondo's constitutional claims. AR000059 – AR00062. For that reason alone, even under the standard most generous to the Defendant, the decision to deny Mr. Arredondo his requested witnesses is arbitrary, capricious, and an abuse of discretion because Defendant "entirely failed to consider an important aspect of the problem." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

Defendant tries to skirt the constitutional claim in its motion for summary judgment by advancing the argument that Mr. Arredondo is not entitled to the requested testimony because the state prosecutor's constitutional disclosure obligation under *Brady* or *Giglio* or state law disclosure requirements does not extend to information only in possession of the federal government and not in the possession of the state prosecutors. ECF No. 9 at 18. The only attention paid to Mr. Arredondo's constitutional claims by Defendant arises out of inapplicable lines of cases from the *Brady* context.

But Mr. Arredondo did not make a *Brady* claim, nor does he assert that his constitutional claims in any way relate to the state prosecutor's duty to disclose exculpatory information. Mr. Arredondo did not and does not claim that Defendant has an obligation to disclose the

information because of any disclosure obligations under *Brady* or its progeny, so the Court need not waste its time analyzing Defendant's strawman arguments under that line of authority.

Mr. Arredondo did claim Defendant's denial of his request for testimony from CBP witnesses is contrary to Mr. Arredondo's constitutional right to due process, right to compulsory process, right to present a complete defense, and right to effective assistance of counsel, guaranteed him by the Sixth Amendment to the United States Constitution and made applicable to the states by the Fourteenth Amendment. And the right hinges not on the government's disclosure obligation under *Brady*, but under Mr. Arredondo's right to receive the information under the Sixth Amendment, an issue Defendant did not even attempt to address.

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Washington v. Texas*, 388 U.S. 14, 19 (1967).

## IV.    Mr. Arredondo showed the testimony is relevant and necessary to the defense and material and helpful to the defense.

Defendant's response to Mr. Arredondo's *Touhy* request states, "Your request is unreasonable in scope and fails to describe your need for this information with particularity." AR00060. First, Defendant's conclusion that Mr. Arredondo's request is unreasonable in its scope is conclusory, unreasoned, and unsupported by the record. Mr. Arredondo's request included a 30-page sworn affidavit from his counsel Matthew Hefti in which Mr. Hefti described the testimony sought from each individual witness and summarized the expected unique testimony of each. AR000029 – AR000058. And while 19 witnesses may seem to be a large

number, the request was narrowly tailored to those who played both critical roles in the law enforcement response and whose actions were related to the allegations against Mr. Arredondo, and the requested witnesses only comprise approximately one-tenth of the CBP personnel who responded.

While it's true that Mr. Arredondo must "make some showing of materiality," *United States v. Valenzuela-Bernal*, 458 U.S. 858, 873 (1982), the necessary showing is not insurmountable, and Mr. Arredondo need only make a *plausible* showing that the testimony would be material and favorable to his defense, especially when the Government is responsible for denying Mr. Arredondo the opportunity to question the witnesses to determine what they would say in response to his questioning. *Id.* Mr. Arredondo "cannot be expected to render a detailed description" of the expected testimony. *Id*. ("Because prompt deportation deprives the defendant of an opportunity to interview the witnesses to determine precisely what favorable evidence they possess, however, the defendant cannot be expected to render a detailed description of their lost testimony.")

The testimony would not be cumulative to the testimony of available witnesses. *Valenzuela-Bernal*, 458 U.S. at 873. Defendant claims it need not make its personnel available to testify because it provided and publicly released much of the information Mr. Arredondo requests through its CBP OPR Report. However, CBP neglects to mention that the CBP OPR Report is heavily redacted and that not a single CBP agent on scene is identified in the report, making its release meaningless. AR000063 – AR000265. The heavily redacted report has no usefulness to the defense and no usefulness to a jury trying to determine which CBP employee took what actions and, more importantly, why they did take or did not take certain actions.

Defendant, "offered an explanation for its decision that runs counter to the evidence

before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise," making its denial arbitrary and capricious. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. CBP's own findings bely their assertions that the individual knowledge of each BPA whose testimony is requested is not genuinely necessary in the proceedings to rebut the necessary causation element that the State is required to prove, specifically, that Mr. Arredondo caused the delay of the law enforcement response.

Defendant claims Mr. Arredondo supported his request for testimony about each BPA's training by explaining that state prosecutors are expected to argue that Mr. Arredondo failed to respond as trained, citing AR000060 – AR000061. In doing so, Defendant cites its own misstatement of Mr. Arredondo's request instead of Mr. Arredondo's actual request. Defendant grossly misstates Mr. Arredondo's request and Mr. Hefti's sworn affidavit. Mr. Hefti's sworn affidavit says, "It is therefore necessary to discuss each officer's training and experience, which all vary, to show the varying levels of training and to show how the actions of law enforcement—and the responding CBP agents—were reasonable based on each individual's training and experience." AR000055 – AR000056.

Defendant unreasonably asserts that BPA's testimony about their training as federal officers would be irrelevant to the question of whether Mr. Arredondo responded in accordance with his training or not. AR000061. But the critical question for the jury is not whether Mr. Arredondo made any decisions contrary to his training; the critical question is whether he committed a crime as alleged in the indictment. AR000004 – AR000027. For the State to prove Mr. Arredondo committed a crime as alleged in the indictment, they must do more than prove Mr. Arredondo didn't follow some aspect of his training; the State must prove every element of that crime as alleged in the indictment beyond a reasonable doubt. Defendant ignores a critical

element alleged against Mr. Arredondo and a key component of Mr. Arredondo's defense.

The State alleges in every count that Mr. Arredondo delayed the response by law enforcement to the gunman. AR000004 – AR000027. The State must prove that essential causation element and allegation beyond a reasonable doubt: that Mr. Arrendo caused endangerment by causing the delay of *other* law enforcement officers. CBP made up the largest contingent of the law enforcement response. CBP itself determined that CBP personnel made decisions and took actions, "on their own, drawing on their individual training, experiences, and moral imperatives." AR000132. It defies common sense to say that testimony about the training and decision-making of the requested witnesses who played critical roles in the law enforcement response is irrelevant to an essential element the State must prove in its case against Mr. Arredondo.

The information as to each requested witness is unavailable from any other source except the witnesses themselves, and in denying that, Defendant ignores a critical part of the accusations and defense of those accusations. Where part of Mr. Arredondo's defense is that individual officers made autonomous and independent decisions not caused by any action or inaction of Mr. Arredondo, he must have the ability to compel testimony from those officers in his favor to explain their own decision making. And no matter how much factual information other witnesses have observed, no other witness can testify to the internal deliberative process of the specific CBP personnel involved, who have been properly requested to be made available to testify in Mr. Arredondo's favor. That is information known solely to the witnesses and can only come from the witnesses. Anything but direct testimony on *why* one of the requested witnesses took the actions they did would be pure speculation. But Defendant focuses solely on *what* CBP personnel did and the availability of that information while ignoring the critical question of *why*

they did what they did, which is information only each of those individual witnesses can provide for themselves.

The testimony from these witnesses is not only relevant, but it is also material and helpful to Mr. Arredondo's defense that he was not responsible for CBP's delay in bringing the situation to a close. In CBP's own words, "CBP personnel, including the individuals who ultimately brought the situation to a close, made autonomous decisions at almost every juncture of the incident, from deploying to the scene to returning to their assigned USBP duty station." AR000132. But in presenting a defense to a jury, it is not enough to assert a generic and global conclusion like the one the CBP OPR Report advances. Factual evidence is necessary for a jury to determine the truth, not mere conclusions of a government agency in an inadmissible and heavily redacted report not subject to direct questioning and cross-examination. The testimony of each of the requested witnesses is necessary because the decision-making of each of these critical witnesses was indeed autonomous and independent, smaller pieces of the whole: "CBP personnel responded to the incident based on a variety of prompts, including both self-deployment and direction to respond from a supervisor." AR000132.

To the extent that Defendant complains that Mr. Arredondo seeks to use CBP personnel as expert witnesses and avers that such expert testimony is available from other sources, they are wrong and again ignore a critical part of the problem. Whether the actions of CBP personnel were objectively reasonable could certainly be the subject of expert opinion testimony available from other sources. Whether the actions of CBP personnel were undertaken based on subjective rationales, individual perspectives, and individual training and experience rather than caused by any action or inaction of Mr. Arredondo is a question of fact for the jury to determine. What those subjective rationales and reasons and opinions may be are questions of fact, obtainable

only from the witness holding the subjective rationale, reason, and opinion that drove that witness's actions or inactions.

The sworn affidavit of Matthew Hefti in Mr. Arredondo's *Touhy* request thoroughly explains the necessity to Mr. Arredondo's defense of each individual requested witness explaining their subjective decision-making. To the extent their testimony can be construed as "expert testimony," or "opinion testimony," such characterizations are incidental to and not integral to Mr. Arredondo's need for their testimony. As Mr. Hefti swore in his Affidavit with his *Touhy* request:

> Part of the defense hinges on demonstrating that Mr. Arredondo's actions **and the law enforcement response** were reasonable under the circumstances and that reasonable officers made reasonable **subjective** decisions based on the dangers, threats, obstacles, and challenges present in the moment. **Each individual officer** had their own perspective, and because the State alleges that Mr. Arredondo is responsible for the decision and actions of the other individual responding officers, the individual perspectives, reasoning, decision making, and actions of the other individual officers—to include CBP officers who comprised the largest contingent of the law enforcement response—must be presented to the jury.

AR000055 (emphasis added). Mr. Hefti made clear that the requested testimony is not meant to stand-in for objective expert testimony, but is necessary to establish **subjective** decision-making and reasonableness, "to show the varying levels of training and to show how the actions of law enforcement—and the responding CBP agents—were reasonable based on **each individual's** training and experience." AR000056 (emphasis added). Mr. Hefti's affidavit also made it clear that the testimony about the subjective reasoning of the individual officers in their decision-making is necessary to establish statutory defenses that have components requiring a jury to assess both objective and subjective reasonableness, including necessity, self-defense, defense of others, and impossibility. AR000056.

Because the delays of CBP personnel in bringing the situation to a conclusion are alleged to have been caused by Mr. Arredondo, and part of the defense is that the delays of CBP personnel were both objectively and subjectively reasonable, it is necessary to present to the jury the subjective reasoning of the CBP personnel regarding their actions or inactions to advance the full range of defensive theories available to Mr. Arredondo.

To the extent that any of the requested CBP witnesses are experts based on training and experience and made decisions based on their training and experience rather than based on any action or inaction by Mr. Arredondo, Mr. Hefti made clear in his affidavit that the testimony is also necessary to rebut causation, i.e., each CBP personnel made decisions based on their own training and experience rather than at the direction of Mr. Arredondo. AR000054 – AR000058. Indeed, that evidence is squarely before the Defendant in the administrative record, and their response made no effort to engage with it. Defendant itself concluded, "CBP personnel responding to the incident did not establish a command and control framework *for their own responding personnel*, which resulted in responders taking on tasks on an ad-hoc basis as requested by local law enforcement or at their own initiative." AR000065 (emphasis added). Because the State alleges Mr. Arredondo is culpable for causing the delay of the law enforcement response—to include delaying the response of the CBP personnel who ultimately ended the confrontation with the gunman—eliciting testimony from each of the witnesses as to *why* it took as long as they did to take the actions they took or *why* they failed to take actions that could have ended the confrontation sooner are material to defending Mr. Arredondo. Because each individual witness will have different subjective reasons for taking or not taking action, the information is unavailable from any other source. And because each witness is expected to have ad hoc subjective reasons for actions they personally took "on their own, drawing on their

individual training, experiences, and moral imperatives," AR000132, live testimony from the requested witnesses is the only way to elicit what those reasons are.

And Mr. Arredondo has every reason to expect that the testimony will not only be material to determining whether he alone is responsible for the delay, it will also be helpful to show that Mr. Arredondo is not personally responsible for many shortcomings or any delay of CBP agents as part of the law enforcement response. Defendant determined, "[E]xisting CBP training on active shooter response procedures did not adequately prepare responding personnel to deal with this situation." AR000066. Mr. Arredondo is faulted for the failures of other law enforcement officers based on his purported role as Incident Commander, but Defendant also concluded its own training and curriculum did not include the proper application of National Incident Management System or Incident Command System protocols and failed to prepare CBP employees for a number of factors, including the need to address an active shooter behind a locked door. AR000066. Defendants also lacked procedures to establish a centralized point from which to disseminate all information pertaining to the incident. AR000066.

Mr. Arredondo advanced a "plausible theory" of how the testimony he requests would be helpful to his defense. *Valenzuela-Bernal*, 458 U.S. at 874 ("At least a 'plausible theory' of how the testimony of the deported witnesses would be helpful to the defense must be offered.") (J. Blackmun, concurring). That is sufficient in this case to establish his right to compel the witnesses he requests. "In short, the right to compulsory process is essential to a fair trial." *Id.* Defendant seeks to deny Mr. Arredondo that fundamental constitutional right. This Court should not allow it.

## V.      This Court has the authority to compel agency action unlawfully withheld.

Defendant erroneously claims that the only remedy available to this Court is remanding to the agency for further consideration and explanation. Defendant is wrong. The Supreme Court

recognizes that in "rare circumstances" the reviewing court need not remand the issue to the agency. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985). If this Court makes its decision in this case based on the law rather than agency factfinding, it must do so by applying its own judgment, because courts—not agencies—decide all relevant questions of law, and the APA affords no deference to agencies and proscribes no deferential standard for this Court to employ when answering legal questions. *Loper Bright Enters.*, 603 U.S. at 391-92. 5 U.S.C. § 706 states, "The reviewing court "shall compel agency action unlawfully withheld or unreasonably delayed." It is within this Court's authority to issue an order compelling the agency to make its witnesses available and comply with any lawfully issued subpoenas in Mr. Arredondo's state criminal court trial to vindicate his constitutional right to a fair trial, right to due process, right to compulsory process, and right to present a complete defense.

## VI.    CONCLUSION AND PRAYER

This Court should deny summary judgment for U.S. Customs and Border Protection. Instead, it should grant summary judgment in Mr. Arredondo's favor.

DATED: July 2, 2026

Respectfully submitted,

/s/ Paul C. Looney
Paul C. Looney
Texas Bar No: 12555900
**LOONEY SMITH CONRAD & HEFTI P.C.**
11767 Katy Freeway, Ste. 740
Houston, TX 77079
Tel. (281) 597-8818
Fax (281) 597-8284
info@looneyconrad.com
**Attorney for Mr. Pete Arredondo**

**CERTIFICATE OF SERVICE**

I certify that on this date, the foregoing Plaintiff's Response to Defendant's Motion for Summary

Judgment and Plaintiff's Cross-Motion for Summary Judgment was served on the Attorney for

the government via the ECF filing system.

/s/ Paul C. Looney
Paul C. Looney